Rosa Dávila, demandante y apelada, *v.* Sucesión de Juan González Cruz, etc., demandados y apelantes.

Núm. 8442.—*Sometido:* Abril 17, 1942. *Resuelto:* Mayo 19, 1942.

*C. Domínguez Rubio,* abogado de los apelantes; *Víctor M. Pons,* abogado de la apelada.

432

El Juez Asociado Señor Snyder emitió la opinión del tribunal.

■ Ésta es una apelación de una sentencia a favor de la demandante en un pleito en cobro de un pagaré. Éste estaba escrito a máquina originalmente y leía como sigue:

"Aibonito, Agosto 30, 1923.—Debo y pagaré a doña Rosa Dávila o a sus herederos forzosos la cantidad de dos mil dólares ($2,000) con intereses al diez por ciento anual (10%), estipulando el 30 de Junio de cada año para el pago de intereses y para hacer efectivo el montante de este pagaré en cualquier año y para los meses de Mayo o Junio siempre que así lo deseare la acreedora. (Firmado) Juan González."

Posteriormente los siguientes cambios fueron hechos con tinta en la faz del pagaré: un signo de intercalación fué puesto entre "mil" y "dólares", la palabra "doscientos" fué escrita en el espacio interlineal sobre las palabras "dos mil", y "($2,000)" fué cambiado para que leyera "($2,200)".

Los apelantes se opusieron a que el pagaré fuera admitido en evidencia por el fundamento de que había sido alterado. La corte inferior resolvió que los apelantes, al no jurar su contestación, habían admitido la autenticidad y otorgamiento del pagaré. Artículo 119, Código de Enjuiciamiento Civil (ed. 1933). Pero dicho artículo no es aplicable a este caso, toda vez que la supuesta copia del pagaré contenida en la demanda no mostraba los cambios arriba indicados. Según se transcribe en la demanda, el pagaré leía como si se hubiera escrito a máquina originalmente por $2,200. El artículo 119 no puede invocarse contra los apelantes para establecer una admisión de la autenticidad de un documento diferente a aquél transcrito en la demanda.

■■ No es necesario que consideremos qué efecto tiene una alteración en un instrumento negociable bajo la Ley Uniforme de Instrumentos Negociables (artículos 477 y 478, Código de Comercio, ed. 1932). En primer lugar, este pagaré fué otorgado en 1923, y dicha ley, aprobada en Puerto Rico en 1930, específicamente dispone que "Las disposiciones

de este título no son aplicables a los documentos negociables extendidos y entregados con anterioridad a su vigencia." (Artículo 547, Código de Comercio, ed. 1932.) Además, un pagaré pagadero, como en el presente caso, a "Rosa Dávila o a sus herederos forzosos," no cumple con la disposición del artículo 354 de la misma ley al efecto de que "Para que sea negociable un documento . . . será pagadero a la orden o al portador . . .". Véanse *First Nat. Bank* v. *Mayor and City Council*, 108 F. (2) 600; *Kerr* v. *Smith*, 142 N.Y.S. 57.

 Sin embargo, aún en un pleito basado en un instrumento escrito que no es negociable, la parte que reclama bajo el instrumento deberá explicar una alteración material que aparezca en la faz del instrumento. Artículo 471, Código de Enjuiciamiento Civil, (ed. 1933). Dicho artículo dispone lo siguiente:

"La parte que presentare un escrito como auténtico, el cual hubiere sido alterado, o pareciere haberlo sido después de su otorgamiento, en alguna parte que fuere material a la cuestión en controversia, deberá·explicar la alteración o su apariencia. Podrá probar que la alteración fué hecha sin su concurso por otra persona con quien no estaba en inteligencia, o que se hizo con el consentimiento de las partes afectadas por ella, o de modo conveniente o sin malicia,. o que la alteración no variaba el sentido o efecto del instrumento.. *Si esto hiciere, podrá presentar el escrito en evidencia, pero de lo contrario no le será permitido."* (Bastardillas nuestras.)

Una interlineación en tinta aumentando el importe de un pagaré escrito a máquina constituye una alteración material del mismo. *Restatement, Contracts,* sección 435; Williston *on Contracts,* edición revisada, vol. 6, secciones 1901, 1902; 86 American State Reports 96. El artículo 471 requiere una explicación satisfactoria de tal· alteración aun cuando dicha alteración se haga antes de entregarse el instrumento. *King* v. *Tarabino,* 199 P. 890 (Cal.). Véanse también, *Smith* v. *United States,* 69 U. S. 219, 231; *Ofenstein* v. *Bryan,* 20 App. D. C. 1; *Restatement, Contracts,* sección 434, comentario *a;* Wigmore *on Evidence,* tercera edición, volumen IX, sección

2525; Williston, supra, secciones 1891–1917, incluyendo el Suplemento Acumulativo de 1941. *Cf. Stubbe Bros. Inc.* v. *Díaz*, 43 D.P.R. 79, 81.

El otorgante del pagaré murió con anterioridad a la radicación de este pleito. La demandante era su ex esposa, de quien él se había divorciado antes de otorgar el pagaré. La apelada declaró en su deposición que éste era "un pleito de $2,000 que le presté y $200 sin intereses" y que su yerno había escrito a máquina el pagaré original. El yerno estaba en corte durante el juicio y aunque el abogado de la apelada indicó que él estaba allí con el fin de explicar la alteración si la corte lo creía necesario, en realidad no se dió tal explicación. La declaración de la corte de que la alteración sólo afectaba el peso de la prueba fué claramente errónea. En vista de las circunstancias y en consonancia con el artículo 471 del Código de Enjuiciamiento Civil, la corte no debió haber admitido en evidencia el pagaré alterado sin una explicación de su alteración, y por tanto debemos revocar la sentencia por ese fundamento.

Como será necesario un nuevo juicio, creemos conveniente discutir algunas de las otras cuestiones suscitadas en este caso. La corte de distrito no erró al declarar sin lugar la moción de *nonsuit* por el fundamento de que el pleito, radicado en 1932, era prematuro. Como indicó la corte inferior, "Hay prueba al efecto de que la demandante requirió de pago al causante de los demandados después de septiembre de 1928 y por consiguiente el deudor venía obligado a satisfacer su deuda en mayo o junio de 1929. Desde entonces la obligación está vencida y era exigible, pudiendo la demandante exigir su pago mediante la acción judicial en cualquier tiempo, sin necesidad de un nuevo requerimiento."

La principal defensa de los apelantes fué que la obligación representada por el pagaré había sido saldada mediante el pago hecho por el otorgante mientras estaba vivo. Para establecer esta defensa, los apelantes ofrecieron pri-

meramente el testimonio de un banquero y el de la segunda esposa del otorgante, al efecto de que el otorgante les había dicho en fechas no especificadas que él había satisfecho el pagaré en cuestión en 1927, dándole al yerno de la apelada la cantidad de $2,100 con el fin de que construyera una casa para la apelada. Esas declaraciones eran testimonios de referencia y la corte inferior no cometió error al excluirlos.

■ De igual manera la corte de distrito correctamente rehusó admitir en evidencia un pagaré en el cual el otorgante había hecho la siguiente anotación:

"Ago constar en este pagaré que esta obligasión fué pagando una obligasión que tiene Doña Rosa dabila la cual no melan entregado la cogió Maner de Jesús Melendre para contrusión dela casa que tiene en la caretera der Cuarter la cantida era de dos mil dolares la que dejo esqurita con mi firma. (Firmado) Juan González Cruz."

Las declaraciones fueron al efecto de que la anotación fué hecha después que el pagaré mismo había sido otorgado y pagado, y fué hecho siguiendo el consejo de su banquero con el fin de evitarse un pleito contra la apelada para obtener y cancelar el pagaré en cuestión por el fundamento de que había sido pagado. Éste era un escrito en beneficio propio (*self serving*) hecho deliberadamente con el fin de proveer evidencia, por lo menos ocho meses después del suceso. Apenas puede ser caracterizado como parte del *res gestae*. *Montaner* v. *Comisión Industrial,* 54 D.P.R. 781, 783; *Pueblo* v. *Calventy,* 34 D.P.R. 390; Chaffee, *The Progress of the Law,* 1919–1922, Evidence, 35 Harvard Law Review 428, 447, 448; Morgan, *A Suggested Classification of Utterances Admissible as Res Gestae,* 31 Yale Law Journal 229; Wigmore *on Evidence,* tercera edición, vol. VI, secciones 1747, 1750, 1753, 1756.

■ Sin embargo, había una parte del testimonio que debió haber sido admitida. Algunas veces un acto puede ser susceptible de más de una interpretación, y la intención de la parte que realiza el acto viene a ser esencial. En dicho caso

es admisible una declaración *contemporánea* escrita u oral de la intención del actor. *Lee* v. *Mitcham,* 98 F. (2) 298 (C.C.A. D. C.) ; *Mutual Life Insurance Co.* v. *Hillmon,* 145 U. S. 285.

En el presente caso la corte inferior impropiamente excluyó el testimonio de la viuda del otorgante al efecto de que él le había dicho a ella que iba al banco ese día a tomar a préstamo $2,100 para dárselos a su yerno en pago del pagaré en cuestión. Ésta fué una declaración contemporánea de su intención al realizar un acto ambiguo (la entrega de $2,100 a su yerno) que era susceptible de diversas interpretaciones. El hecho de que la declaración fuera hecha antes del acto no afecta la aplicación de la regla. En verdad, la mayor parte de las declaraciones contemporáneas son hechas inmediatamente antes o después, en vez de durante el acto.

No podemos determinar si esta misma regla puede ser invocada en favor de una declaración similar hecha al banquero en la fecha en que el otorgante solicitó el préstamo de $2,100. Eso depende en gran parte en cuánto tiempo después los $2,100 fueron entregados al yerno. El récord no demuestra el tiempo que transcurrió entre estos dos hechos. Si esas fechas son establecidas en el nuevo juicio, la corte de distrito se verá en la necesidad de determinar si la anterior declaración hecha al banquero fué una declaración contemporánea dentro de la regla.

 La corte de distrito declaró como hechos probados que el otorgante cogió a préstamo $2,100 y que los ingresó en la cuenta de banco de su yerno, y los cuales éste usó para construir una casa en la cual la apelada, su hija y su yerno han vivido desde aquella fecha. La corte de distrito, sin embargo, resolvió que no se había demostrado que el yerno fuera el agente de la apelada para recibir el pago a nombre de ella o de que la apelada había ratificado tal agencia al aceptar sus beneficios. Convenimos con la corte de distrito en que los apelantes deben establecer mediante evidencia competente una de estas alternativas para que prevalezca su

defensa de pago. *Schweitzer* v. *Bank of America N. T. and S. A.*, 109 P. (2d) 441, 445 (Cal.); *Restatement, Agency*, secciones 98, 99. Los apelantes no cumplirán con esta obligación si descansan, como lo han hecho en esta apelación, en la mera residencia de la apelada en la casa en cuestión.

Este pleito fué radicado en 1932 a base de una obligación que se alegaba estaba vencida en 1929. No se celebró el juicio hasta 1938. La corte de distrito tuvo bajo su consideración la moción de nonsuit hasta 1940. El caso se decidió en sus méritos en 1941. No intentamos fijar la responsabilidad de esta situación en la corte de distrito o en cualquiera de las partes, pero creemos conveniente invocar la tantas veces repetida admonición de que "Justicia demorada, es justicia denegada" (*Justice delayed, is justice denied.*). Éste es un caso sencillo en el cual el testimonio debe ser comparativamente corto. Debe ser resuelto prontamente mediante nuevo juicio.

*La sentencia de la corte de distrito será revocada y devuelto el caso para nuevo juicio y procedimientos ulteriores no inconsistentes con esta opinión.*